We'll hear the first case, United States v. Shapiro. May it please the Court. Good morning. My name is Andrew Freifeld and I represent Appellant Robert Shapiro. This Court must agree that it was wrong in 1997 when it said that Shapiro suffers no adverse consequences if this Court opts not to address the issue of whether a financial institution was affected by Shapiro's contact. Indeed, I think if this Court had a crystal ball in 1997 and looked to today, it would say to itself indeed he suffered significant adverse consequences. What about the Warren case that says that this is not the time to challenge this? He challenged it in the first place and the Court denied his request that it do that. So what else is he supposed to do? When else can he — He filed a petition for cert, filed a petition for rehearing before that panel and say there may be consequences down the road other than just the concurrent terms of incarceration. There might be a supervised release violation that's triggered by the increased statutory maximum. It's conceivable, too, that he didn't anticipate this, just like this Court didn't either. And therefore what? I submit he did what he was supposed to do, unlike in the Warren case where not so much — there was a change in the law and that's what affected Warren. So the defendant didn't preserve the issue in the first instance because there was no issue to preserve. It was pre-apprendi that he was sentenced. And he was invoking apprendi in the second place. But here, what else? I don't know. Well, you answered me as to what else my client should do, but I submit he had nothing else to do. He didn't foresee it either. But he did the right thing in the first — In the supervised release — Pardon me, Judge? In the supervised release violation proceedings, he did not raise the issue of whether a financial institution had been affected. That's true. He didn't. We review for plain error. You know, my argument is that's not true. You know, I would like to remove this case from — I would like to try to remove this case from the typical tracks, such as we review for plain error where it wasn't raised below, because he raised it in the first instance here. And he was denied the opportunity to have it heard. So why does he now have to jump through three other hoops in order to get this issue adjudicated by this court, when he did the right thing in the first place? I understand that argument. But why don't you just assume, arguendo, you have to meet plain error? So can you do that? You know, it's funny. Can I meet plain error? I think that — yes, I think — the record is unique in that Shapiro claims that, you know, he had five different attorneys. And it's true. Here, over a nine-month period, he did have five different attorneys, OK? The guy's got a really bad record. He's been in a lot of trouble, OK? So these attorneys were telling him, look, just take a plea. Put yourself at the judge's mercy and take a plea. That's what he said they were doing. That's why he chose to proceed pro se. It necessarily follows that none of them had read this court's prior opinion. If any lawyer representing this guy had read this court's prior opinion, they would have raised the issue. So he said, I have enough of these guys who are trying to just sell me out. I'll proceed pro se. OK, so it's true, then. OK, so having said that, I am raising an ineffective assistance claim there, I suppose. I've never heard of a 2255 ineffective assistance claim on a supervised release proceeding. So I hope the court isn't going to reject the argument on that ground. Do you have any problem with the Feretta hearing or the determination that Judge Ross conducted at the time of the sentencing of whether he should be able to go pro se and whether he understood the consequences of that? I did not raise any issue in my brief about that, about all of that, no. I did claim that the manner, but not so much on the Feretta hearing. I raised it about the hearing itself, once the waiver was done. I did raise the issue, though, that he didn't really, you know, understand her sentencing reasoning. And so he didn't really have the opportunity to challenge, to make up, to come forward with the argument that I'm coming forward with now. Well, isn't that the risk of going pro se? And if you have an adequate Feretta hearing and he's made that determination, he has to live with it. OK. Maybe the four or five lawyers should have represented him at it, but once he said, I want to proceed pro se, and the district judge does the adequate Feretta hearing, OK, you're the one now. OK, but you see- I like it, but that's the way it is. But you see, though, that none of the five prior lawyers took the time to read this court's prior opinion in this very case. That's undisputed. One of them would have raised it, surely. You know how I found out about this argument that I'm making now? I read this court's opinion in this case. So why didn't any of these people do it, is my response, Your Honor. Four or five lawyers failed to provide effective assistance. Is that my claim? Yeah. Yes. Yes. And I'm asking you not to tell me to bring it up on a 2255, because as I said, I've never heard of a 2255 on a supervised release proceeding. I don't know if they lie. When he was pro se, he also didn't bring up the issue. Yes, yes. That was, I think, Judge Droney's point. You'll note also, though, that, however, I do argue as well that the district court was a little bit too snappy with the hearing. With no announcement whatsoever, with no prior announcement, the court announced, I'm doing the Feretta hearing today, and I'm doing the supervised release hearing today, and I'm imposing sentence today. Well, he's the one who wanted to be sentenced, right? Well, no. He said that, I want to go ahead and be sentenced today.  He did say that. So, yeah. Was it a challenge, you know, whether he got written notice of the charge, disclosure of the evidence before him? Yes, I did. There was a status conference when he was represented by Attorney Ennis, where she said she's reviewed the violations with him. There was extensive description of the nature of the offense and the violation of supervised release condition at the sentencing. It's pretty easy. It's the attempted sexual assault, and they went into the details of it. What wasn't he told? He was never provided written notice of what the charges were. And I think that that is a per se violation. I mean, you could go... Ms. Ennis, let me quote from that statement, where he was present. This is February 18th. Okay, Ms. Ennis, have you had an opportunity to review the violation with your client? Ms. Ennis, yes, I have reviewed the violation. He was present for that, right? Yes, absolutely. Yes, he was present for that. We all know what a violation report looks like. It's got the description of the violation, the supervised release condition that's violated. We do, but he doesn't. Well, he said he reviewed it with... She said she reviewed it with her client. What does that mean? She read it to him? That's like saying a guy enters a plea on an indictment. He never received a copy of the indictment, but it says in the record that his attorney read it to him. That's sufficient? I submit it's not. So I know the problem on that is going to be, though, for me, I submit, is going to be... The court's going to say, well, that's not going to change what the district court's going to do if we send it back. You've got to give him written notice. It's just the same thing. It's going to happen again. I want you to know he can challenge it to 297 days. So if you do send it back, he will have that opportunity, even if the district... Was it greater than that? Because he thought it was less than that at the hearing. Well, he's not his best advocate, this argument has shown. I don't recall his position on that, but I'm prepared to represent him and investigate it. Thank you. We'll hear from the government. Good morning, Your Honors. May it please the Court. I'd just like to briefly address some of the points that were already raised. With respect to... I should be able to hear you. Apologize, Your Honor. Is that better? Okay. With respect to the Warren matter, the appellant argued at some length that the defendant did everything he could. The question in Warren simply is not dependent on whether or not the defendant made an attempt to appeal. Indeed, the holding in Ortiz sort of belies that argument. What was he supposed to do? You know, he challenged the 30-year maximum on his direct appeal, and the Court said, we don't need to reach that because you've got concurrent time here on the other offenses of conviction. What is he supposed to do with that? Maybe he doesn't think about it's going to result in a B felony and a 3-year maximum now. But what was he supposed to do to be able to challenge that in accordance with Warren? Well, as Your Honor noted, there was the opportunity to file cert. But I think the takeaway from this Court's holding in Warren is even if the Court of Appeals had decided the issue and gotten it wrong, this would not be the time to challenge it. There are set procedures and law with respect to when someone can challenge their underlying conviction. The considerations in Warren are, even if the law was wrong in the underlying — for example, the Apprendi issue. Apprendi would have dictated, if applied in the Warren matter, that the Second Circuit had actually gotten the issue wrong on the underlying conviction. The principle stood. So the considerations were the interest in finality. The orderly administration of justice and fairness dictate that regardless of what happened, there is a time and an expiration date. But that still is an opportunity to challenge it. And he had an opportunity to challenge it. And I don't know that it's dependent on that. I think that Warren did not necessitate that an appeal had been had. And in the Ortiz matter, the same result occurred despite the fact that there had been no appeal. There was no concern about the fact that the defendant hadn't sought further review. It maintained that it is not an appropriate time to go back to an underlying conviction in the context of a violation of supervised release. And at minimum, there's certainly no plain error here. The — Judge Ross made this decision based on the law of the case as it stood at the time that it was presented to her. So there can be no — Roberts. If he had raised the issue in the supervised release proceedings, would the government's position have been that it was too late? O'Connell. If he had raised it, I would have — I would have likely argued that Warren dictated that this is not the time to address this issue. And I'll note that in this matter, we're now decades removed from the underlying conviction. So there's sort of two questions being volleyed here. One is whether the decision in the immediate appeal on this matter was incorrect in stating that the defendant wouldn't be affected by the 15-year sentence. And the other is whether Judge Ross committed plain error in her sentencing. And that's just not the case here. She did not. And it's certainly not under a plain error standard of review, which we would argue is present here. To answer the question with respect to Judge Trager's ruling, we'd have to go back nearly decades. And the case law says — What's the answer, anyway, on the question? Did it affect the financial institution? It's the government's position that it did. You know, there's some argument in the brief — The factual question, would it have been — required a factual hearing? Would it have required a factual hearing? Would — I apologize. Yeah, I mean, on the question — to answer the question of whether there was an effect on a financial institution, would that have required a hearing of some kind back in the 90s? I would imagine it would have required going back to the evidence that had been presented in the matter. What remains true, what we do know, without having gone back to the evidence at issue 20 years ago, is that the checks were cashed at a time that the successor in interest of the bank could have easily been held accountable in some way. Perhaps not ultimately, but they certainly incurred at least a risk of loss by virtue of having to potentially defend any claim to liability on those checks. And it stopped payment on the checks? They did. So the position is not necessarily that they lost dollars. And I don't think that the law requires that. The risk of loss is sufficient. And I don't think it's a huge leap to assume that the successor in interest to a bank could somehow be exposed to risk of loss should, for example, someone claim that they are liable for their predecessor's bad checks. With respect to the propriety of the violation of supervised release hearing, I think the record is clear that the defendant had actually reviewed the violation report. Your Honor mentioned one instance in which counsel stated on the record in front of the client that she had reviewed it with him. There was actually a second instance when he was first arraigned where counsel went further and stated that he had actually indicated to her that he read the report himself. And again, that was without objection. With respect to the speed with which the hearing was proceeded, that was entirely in keeping with the defendant's repeated insistence that he wanted to plead guilty and be sentenced that day. This was not a typical evidentiary hearing. This was an acceptance of the defendant's guilty plea. And I think Judge Ross went further by also having the government present evidence so as to be further satisfied in addition to the defendant's elocution, which she also accepted as sufficient. With those issues addressed, unless the court has further questions, the government would rest on its papers. Thank you. We'll hear the rebuttal. Judge Ross did not accept a guilty plea here. The court said, I want to do this right. That's what the court said and then proceeded to conduct an evidentiary hearing. So this is not a case of an acceptance of a guilty plea, number one. Number two, I don't think there should have been a fact-finding hearing as to whether or not the bank was, the financial institution was affected because it's a jury issue, plain and simple. So I don't think there ever would have been such a hearing. And that segues me nicely to, I had to, when I filed this brief in February, I ordered this court's prior file from the 1996 case. And it took a couple of weeks to get it from archives. And so when I was done with it after I filed the brief, I assumed that this court would want to go through that file very carefully to find out whether or not it showed whether a financial institution was affected or not. I was disappointed to call the clerk's office this week and find out that the file had been sent back to archives. I urge the court to go get that file because it will show that the government failed to record that any financial institution was affected. We're not going to go there, though, unless we see a limit to Warren, right? That is true. That is true. But as I say, I maintain that Warren is distinguishable because what underlies the rationale of Warren is finality and the orderly administration of justice. Here, Shapiro made a bid for finality, and he made a bid for what the court calls an orderly administration of justice. And his bid to have that done was denied by this court. And accordingly, this case falls without Warren. And I urge the court to reach the merits. Thank you. Well,